# United States Court of Appeals
## For the First Circuit

No. 05-1543

ARNOLD HOFFMAN,

Plaintiff, Appellant,

v.

APPLICATORS SALES AND SERVICE, INC., d/b/a
PARADIGM WINDOW SOLUTIONS, ANDREW SEVIER, and RICHARD ROBINOV.
Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. Gene A. Carter, District Judge]

Before

Lynch, Circuit Judge,

Campbell and Cyr, Senior Circuit Judges.

David M. Hoffman for appellant.
Louis B. Butterfield with whom Bernstein, Shur, Sawyer, &
Nelson was on brief for appellees.

February 22, 2006

**CAMPBELL**, <u>**Senior Circuit Judge**</u>.   Appellant plaintiff Arnold Hoffman appeals from the district court's granting of summary judgment for appellee defendants Applicators Sales and Service, Inc., Paradigm Window Solutions, Andrew Sevier, and Richard Robinov (collectively, "defendants" or "the Company"), and from the court's striking of the plaintiff's designation of an expert witness.   We affirm.

## I.  Background and Facts

Hoffman filed in the Maine Superior Court a three-count complaint alleging age discrimination, defamation, and breach of employment agreement.  On July 21, 2004, the defendants removed the action from the state to the federal court.

The district court thereupon issued a scheduling order setting dates for the parties to designate expert witnesses, to complete discovery, and to file dispositive motions.  Discovery took place in the form of requests for documents, depositions, and interrogatories, following which the defendants moved for summary judgment.  The court granted judgment as a matter of law in favor of the company on Count 1 for age discrimination and remanded the remaining claims to the state court.[1]

---

[1]Sometime after the deadline set by the district court for designating expert witnesses, Hoffman designated an expert, and the Company moved to strike the designation.  The court granted the Company's motion to strike, a ruling from which Hoffman now appeals. Because, however, we affirm the grant of summary judgment to defendants, we need not review the status of Hoffman's witness designation.  Even if the court erred on the witness designation,

We view the record on summary judgment in the light most favorable to the nonmovant.  See Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 50 (1st Cir. 2000).

Applicators Sales and Service, Inc. ("Applicators") is a wholesale distributor that sells building products to professional contractors.  Part of Applicators' business included manufacturing windows under a franchise agreement with a national company.  At some point, Applicators decided to end its relationship with the franchisor in order to start a new venture with its own products.  This new venture resulted in the creation of defendant Paradigm Window Solutions ("Paradigm").  Defendant Sevier is Paradigm's General Manager.  A semi-autonomous division, Paradigm makes and distributes windows under its own name and for a private label.

Before joining the defendants' company, Arnold Hoffman was employed for seven years by MBF Windows in Portland, Maine.  He served as the head of MBF's Portland operation, performing a wide range of duties, and supervised one or two employees at any given time.  Responding to an advertisement for an outside sales position at Applicators, Hoffman submitted his resume to the company in March or April of 2000.  He interviewed first with defendants Robinov and Sevier and two other employees.  They did not explain much about the position because Applicators had not yet announced plans to sever ties with its franchisor.  About three weeks after

_____

the summary judgment would still stand.

-3-

the first interview, Hoffman was called in for a follow-up interview and offered the job, which would be with the new entity, Paradigm.  He accepted and began work in May 2000.  He was 54 or 55 years old when he began with the company.

Sevier was Hoffman's supervisor throughout his employment at Paradigm.  Hoffman viewed Sevier as an irrationally demanding supervisor, and the relationship between the two deteriorated over time.  Hoffman testified in his deposition that Sevier "was a very poor manager [who] . . . motivated by intimidation and negative . . . comments, not by positives and encouragement."  He also wrote in a letter to Jerry Robinov, one of the founders of Applicators, that "Most of the salesmen hate dealing with [Mr. Sevier] and will do everything they can to avoid him. . . .  I am not the first employee to have experienced [Mr. Sevier's] wrath or his poor personnel management skills.  I'm sure I won't be the last."  He testified that "it was a general consensus behind [Sevier's] back that people did not like him.  They didn't like the way he treated them."

Hoffman was very successful in sales, achieving a 56 percent sales increase in his last fiscal year of employment, an increase which the Company's Sales Manager, Steve Zerbinopolous, acknowledged as unmatched.  His May, 2002 performance evaluation rated him as "exceeds requirements" (a score of 4 on a scale of 1-5) for problem solving, communication, initiative, and innovation

and rated him as "meets job requirements" (a 3 on a scale of 1-5) for quantity of work, job knowledge, planning/organizing, adaptability, and cost consciousness. He was given a rating of "needs improvement" (a 2 on a scale of 1-5) in the categories of managing people, judgment, safety awareness, and leadership. He received a merit pay increase after that evaluation.

On May 22-23, 2003, Hoffman underwent another annual performance review. In the written review, Sevier was critical of Hoffman's performance and declined to grant him a merit pay increase. Hoffman and Sevier agreed to meet on August 29, 2003 for a follow-up, at which time Hoffman's performance would be re-evaluated and a determination would be made about whether to increase Hoffman's salary. In the performance review, Hoffman received a rating of "meets job requirements" in problem solving, adaptability, dependability, communication, innovation, appearance, cost consciousness, and safety. He was given a rating of "needs improvement" in the categories job knowledge, judgment, leadership, and training. The overall rating stated:

> There are concerns with the manner in which you manage your territory and time. It appears as [though] you have not systematically scheduled to visit your accounts and you do not follow up with the requests made by your customers. You need to improve your presentation skills. You need to make dramatic improvement in these areas.

Hoffman sent Sevier a written rebuttal to his criticisms immediately following the May review. Sevier responded in writing

to the rebuttal and reiterated his plan for the August review. Hoffman sent Sevier a second rebuttal on June 22, 2003.

On or about June 25, 2003, Hoffman and Sevier had a dispute about the status of a work-related project. Hoffman missed a deadline for the production of sell sheets for window products, and Sevier became impatient with Hoffman's attempts to explain the reason he missed the deadline. Hoffman argued that the sell sheets were substantially complete but for information that was to be supplied by Sevier and the inclusion of a few photos which, Hoffman claimed, Hoffman or a photographer "could have taken in an afternoon." Sevier lost his temper with Hoffman, and, on June 27, 2003, the Company terminated Hoffman's employment. Scott Frazier, a long-time Company employee, assumed Hoffman's position about three months after Hoffman's termination. Frazier was less than forty years old at the time he was promoted.

The district court, reviewing the defendants' motion for summary judgment, assumed arguendo that the plaintiff had made out a prima facie case of employment discrimination. The court also found that the defendants had put forward a legitimate reason for his termination (the flawed 2003 performance review and the June 25, 2003 missing of a project deadline). Addressing next whether Hoffman had carried his burden to establish that the defendants' stated reason for termination was a pretext for age discrimination,

the district court found that Hoffman had not introduced sufficient evidence to establish that it was such a pretext.

Hoffman relied on what he called "Exhibit E," attached to his Offer of Proof, a chart which purported to summarize the number of employees at Applicators and Paradigm and of those over the age of 50 at each division. The district court struck Exhibit E from the summary judgment record on the grounds that it was inadmissible because it was not properly authenticated and was based on data that had not been authenticated or presented in the summary judgment record. Further, the district court noted, the accuracy of the information in Exhibit E had not been sworn to under oath.

The district court concluded that without Exhibit E, Hoffman had not placed in the record any evidence of age discrimination or age-based animus and held that no rational fact-finder could infer from the record as it existed an employment action based upon age discrimination. The court entered summary judgment for the defendants on the age discrimination claim and remanded the remaining two state claims to the Maine state court. This appeal followed.

## II.  Discussion -- Summary Judgment

On appeal, Hoffman argues that the district court erred in striking Exhibit E and in ruling that Hoffman had introduced insufficient evidence of pretext and age-based motivation. We disagree.

## A.  Standard of Review

We review de novo the district court's decision to grant summary judgment.  Roldan-Plumey, 115 F.3d at 61.  However, we review the district court's decision to exclude an exhibit from evidence only for abuse of discretion.  "[P]rior to turning to its de novo summary judgment examination," the Court should review the district court's evidentiary rulings made as part of its decision on summary judgment for abuse of discretion.  Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 31 (1st Cir. 2004) (citing Schubert v. Nissan Motor Corp., 148 F.3d 25, 29 (1st Cir. 1998)).  "[A] trial court should have as much leeway in dealing with those [evidentiary] matters at the summary judgment stage as at trial."  Id. at 31-32.

The phrase "abuse of discretion"

> sounds worse than it really is.  All it need mean is that, when judicial action is taken in a discretionary matter, such action cannot be set aside by a reviewing court unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.

Schubert, 148 F.3d at 30 (quotation omitted).  A "court of appeals ordinarily will not find an abuse of discretion unless perscrutation of the record provides strong evidence that the trial judge indulged in a serious lapse in judgment."  Texaco P.R., Inc. v. Dep't of Consumer Affairs, 60 F.3d 867, 875 (1st Cir. 1995).

## B. Exclusion of Exhibit E

Under Federal Rule of Civil Procedure 56(e), on summary judgment, the parties in their supporting affidavits "shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. <u>Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith</u>." See Carmona v. Toledo, 215 F.3d 124, 131 (1st Cir. 2000) (emphasis supplied). The district court held that Exhibit E was not admissible because it was not authenticated and was based on data not authenticated or presented in the summary judgment record. "In reviewing a summary judgment, we are limited to the . . . evidence available to the court at the time the motion was made." Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003).

According to Hoffman, Exhibit E should nonetheless have been admitted as it was a tabulation of "documentary evidence provided in discovery by Defendants." Hoffman says the tabulated data in the Exhibit demonstrates age discrimination because it shows that Paradigm employed only one person over the age of fifty, while twenty-two percent of Applicators' employees were over fifty. The Exhibit consists of a chart with attached explanatory notes purporting to list the total number of employees at Paradigm and Applicators and breaking down the number of salaried employees and the number of salaried employees over fifty years of age. A

-9-

footnote states that some employees have been excluded from consideration in the calculations. Other footnotes to the chart indicate that the data therein is based on disclosures provided by the defendants in document discovery at pages D492 through D509. Exhibit E's preparer is not named, and the cited underlying pages of documentary discovery are neither attached to Exhibit E nor included elsewhere in exhibits or attachments filed by either party in connection with the summary judgment motion or opposition.

Hoffman does not deny in his appellate and reply briefs the district court's assertion, echoed by defendant appellees in their brief, that the discovery documents allegedly underpinning Exhibit E were not presented to the district court. Indeed, nothing in the docket below indicates the discovery documents referenced in Exhibit E had in any manner been filed with the court. Hence, to have located them, the court would have had to initiate a search going beyond any of the documents filed with the case. Only on appeal has Hoffman, for the first time, submitted several Bates-numbered pages from the defendants' discovery disclosures listing employees and their birthdates and dates of hire.[2]

_____

[2]Defendants have moved to strike the pages tendered on appeal on the ground that they were not submitted to the district court. We denied the motion without prejudice to reconsideration at the time we resolved this appeal. We now allow the motion as the pages have not been shown to have been a part of the record below. See infra pp. 11-12.

-10-

Hoffman argues that, even though the supporting pages now tendered may not actually have been before the district court, they reflect data disclosed by the defendants themselves during discovery. Moreover, he asserts, the disclosures would be admissible at trial as business records. Therefore, Hoffman says, their authenticity cannot now be questioned and "[t]his critical piece of evidence [i.e., Exhibit E] should have been considered by the District Court when considering Defendants' motion for summary judgment . . . regardless of what may appropriately be required for its admission into evidence at trial."[3]

But Hoffman overlooks the crucial point that documents do not automatically become a part of the record simply because they

---

[3]Hoffman points to language in Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986), in which the Supreme Court stated,

> [w]e do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. Obviously, Rule 56 does not require a nonmoving party to depose her own witnesses. Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the showing to which we have referred.

In context, however, the quotation addresses the specific point in Celotex that a nonmoving party who bore the burden of proof on a dispositive issue could rely on her own affidavits and the "depositions, answers to interrogatories, and admissions on file" without having to depose her own witnesses. Id. (quoting Rule 56(c))(emphasis supplied). The reference is not availing for Hoffman here when the issue is the court's refusal to accept a chalk supported only by discovery disclosures that were never "on file" with the district court.

-11-

are the products of discovery.  See Fed. R. Civ. P. 56(e) ("[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith"); In re Citric Acid Litig., 191 F.3d 1090, 1101-02 (9th Cir. 1999) ("The document on which [the plaintiff] relies for its market share figures was not submitted as part of the summary judgment record, and thus we do not consider it.").  If a party wishes the court to consider matters disclosed during discovery, he must take appropriate steps to have them included in the record: merely citing to pages of discovery materials not of record does not suffice.

Hence, whatever argument Hoffman may have had for admission of Exhibit E as a "chalk" grounded on data found in defendant appellees' business records, required that the discovery documents containing such records be brought first before the court, by being placed in the summary judgment record.  Where that was not done, the district court did not abuse its discretion in not seeking out the referenced documentation on its own and in rejecting the Exhibit.  See 11 James Wm. Moore et al., Moore's Federal Practice § 56.10 (Matthew Bender 3d ed.) ("Courts generally accept use of documents produced in discovery as proper summary judgment material; but, if such documents are not on file with court, they must be provided to the court.").

-12-

We thus reject Hoffman's argument that Exhibit E was admissible as, in essence, a "chalk" accurately summarizing the Company's own employment information. See United States v. Patrick, 248 F.3d 11, 25 (1st Cir. 2001). Without having the discovery disclosures before it, the district court was in no position to determine if Exhibit E properly reflected admissible data. A chalk "must be fully supported in all respects by corroborating admissible evidence." United States v. Morse, 491 F.2d 149, 153 n.6 (1st Cir. 1974), cited with approval in Patrick, 248 F.3d at 25. Even supposing arguendo such corroborating evidence existed in the discovery documents, those documents were not before the judge, and the judge had no duty to search for them outside the record in order to see if they contained proper supporting data.

Hoffman is also wrong to rely on Carmona, in which we held that documents supporting a motion for summary judgment could not be considered because they had not been properly authenticated. 215 F.3d at 131. Focusing only on Carmona's statement that an authenticating affidavit complying with Rule 56(e) is required under summary judgment, id., Hoffman argues that he submitted a "fully conforming Offer of Proof and Affidavit." Rule 56(e), however, as already noted, requires that the affidavit be made on personal knowledge, set forth facts that would be admissible in evidence, and show affirmatively that the affiant is competent to

testify to the matters stated therein. Moreover, "sworn or certified copies of all papers" referred to in the affidavit must be attached. Id.

Hoffman's affidavit opens with a general statement that the affidavit is based on his personal knowledge, but he makes no mention of how he came to have personal knowledge of the facts contained in Exhibit E, nor does he affirm in the affidavit that he would be able to testify to the facts contained in Exhibit E at trial.[4] The chart he attached to his offer of proof is not authenticated in any way, nor, as already discussed at length above, did he identify the source of the facts and figures listed

---

[4]Paragraph 11 of the affidavit focuses on Exhibit E:

While Defendants contend that they did not fire me because of my age, it is clear that their stated reasons for firing me are not true and are pretextual. Moreover, Exhibit E attached hereto is powerful affirmative evidence of age discrimination by Sevier, Robinov and Paradigm....Exhibit E shows that Paradigm's age employment profile is skewed to the point where a conclusion of age discrimination can clearly and cogently be found. Buttressing this conclusion is the fact that the sole Paradigm employee, except for Sevier, over 50, Stephen Fisk, is classified as a Maintenance Administrator, and is the practically irreplaceable technician/engineer who takes care of Paradigm's production machinery. He should be exempted from any general salaried employee list, just as have been the Applicators' shareholders, one half of whom are retired. If Mr. Fisk were excluded along with Sevier and now Hoffman, Paradigm, would show -0- employees over 50 out of 263 total and 28 salaried; while the balance of the Company would show 12 over 50 out of 159 total and 55 salaried. Such a discrepancy is clear evidence of age discrimination.

in the chart beyond reference to Bates-numbered pages from discovery documents not attached to the chart. No independent basis for admitting the chart--such as that it was a business record of the companies, see, e.g., United States v. O'Connell, 890 F.2d 563, 566-67 (1st Cir. 1989)--and no authenticating foundational information was provided. The chart in Exhibit E was clearly not itself a business record, nor was it admissible under some other evidentiary rule.

We hold, therefore, that the district court did not abuse its discretion in refusing to consider Exhibit E.

## C. Age Discrimination Claim

As we uphold the exclusion of Exhibit E, we also uphold the entry of summary judgment for defendants. Under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 et seq., "it is unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." Id., § 623(a)(1). In order to prevail in a lawsuit under the ADEA, the plaintiff's age must actually have played a role in the employer's decision-making process and have had a determinative or motivating influence on the outcome. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141 (2000).

To establish a prima facie case of age discrimination, "an ADEA claimant must adduce evidence that: (1) [he] was at least forty years of age; (2) [his] job performance met the employer's legitimate expectations; (3) the employer subjected [him] to an adverse employment action (e.g., an actual or constructive discharge); and (4) the employer had a continuing need for the services provided by the position from which the claimant was discharged." Gonzalez v. El Dia, Inc., 304 F.3d 63, 68 (1st Cir. 2002). The prima facie showing creates a rebuttable presumption that the defendant-employer violated the ADEA. Id. at 69-70. After the creation of such a presumption, the burden of production shifts to the defendant-employer to articulate "a legitimate, nondiscriminatory basis for its adverse employment action." Id. at 70.

If the employer is able to articulate a legitimate, non-discriminatory reason, the presumption afforded to the plaintiff's prima facie case disappears, and the plaintiff must "adduce sufficient creditable evidence that age was a motivating factor in the challenged employment action." Id. at 69. The plaintiff may meet his burden of going forward by showing that the employer's articulated reason for the challenged employment action was pretextual, Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 430 n.5 (1st Cir. 2000); the ultimate burden on the plaintiff is to show that discrimination is the or a motivating factor, a showing

-16-

which may, but need not be, inferred, depending on the facts, from the showing of pretext.  <u>Fite</u> v. <u>Digital Equip. Corp.</u>, 232 F.3d 3, 7 (1st Cir. 2000) (citing <u>Reeves</u>).

The district court presumed that Hoffman had made out a prima facie case of age discrimination and found that the defendants had put forward a legitimate, non-discriminatory basis for Hoffman's termination: his performance review and the missed project deadline.  Having excluded Exhibit E as inadmissible, the court found that Hoffman had "placed in the summary judgment record no other evidence of age discrimination or of any age-based animus."  The only facts even suggesting age discrimination were that Hoffman was over forty when he was terminated and his replacement was slightly under the age of forty.  Offset against this, however, was the fact that Hoffman was over fifty years old when he was initially hired.

Hoffman makes much of the fact that the district court cited <u>Reeves</u> for the proposition that a pretextual reason for termination without other evidence of a motivation based on age-bias can be enough to defeat summary judgment.  <u>Reeves</u>, 530 U.S. at 147.  The <u>Reeves</u> Court wrote:

> a plaintiff's <u>prima</u> <u>facie</u> case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. . . .  This is not to say that such a showing by the plaintiff will always be adequate to sustain a jury's finding of liability.  Certainly there will be instances where, although the plaintiff has

-17-

established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory.

Id. The district court wrote that "[t]his case, where there is an absence of any persuasive evidence of a motivation based on age-bias, is precisely that case which the Reeves Court excluded from its rule." Later in the opinion, the court also wrote that "[o]n this summary judgment record, there is simply no admissible evidence countering the employer's termination reason, let alone any admissible evidence to believe Plaintiff's claim that any consideration of age motivated his discharge."

Hoffman argues the district court found the defendants' proffered reason for terminating him was pretextual. This characterization is not easily squared with the court's own statement ("The record is devoid of any credible evidence that Defendants' employment actions were a pretext for age discrimination."). But in any event, pretext or no, we do not find on de novo review sufficient evidence to support a finding that age discrimination was a factor motivating the termination. Hoffman argues that the evidence shows defendants' complaints about his work performance were "blatant fabrications." However, his performance evaluation indicated that he struggled in some areas. Immediately before he was fired, he had missed a deadline for the completion of a project, a mistake in character with one of the criticisms outlined on his performance evaluation. He himself,

moreover, described Sevier as an irrationally demanding and difficult manager to work with. Evidence of their deteriorating relationship suggests that bad feeling may have been another ingredient in Sevier's decision to discharge him. What is lacking is evidence from which a reasonable inference can be drawn that age discrimination was also a factor. We believe that regardless of whether the defendants' stated reasons for termination could be found to be pretextual, no factfinder could rationally conclude from the record before the district court that the termination--whatever its precise motivation--was motivated by discrimination based upon Hoffman's age. Reeves, 540 U.S. at 147.

### III. Conclusion

The district court's judgment is **affirmed**.